IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CAREES L. LINZY,**                                Case Number 1:14 CV 1558

       Petitioner,                                    Judge James Gwin

       v.                                             Magistrate Judge James R. Knepp, II

**CHRISTOPHER LAROSE,**

       Respondent.                                    REPORT AND RECOMENDATION

## INTRODUCTION

*Pro se* Petitioner Carees Linzy ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA") codified as 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden LaRose ("Respondent") filed a Return of Writ (Doc. 5) with attached exhibits, and Petitioner filed a an Objection which the Court will construe as a Reply (Doc. 14).  The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated October 20, 2014). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Fifth

District Court of Appeals set forth the following findings of fact:

> Defendant-appellant, Carees Linzy, ["Linzy"] appeals his convictions on two count (sic.) of murder, each with a firearm specification, having a weapon while under disability, carrying a concealed weapon, tampering with evidence and possession of criminal tools. Plaintiff-appellee is the State of Ohio.
>
> On December 25, 2011, Linzy and his friend Kenny Graves went to Kostas Bar in Mansfield, Ohio. Linzy drank, shot pool, and ordered a six-pack of beer to go. Around 1:45 a.m. on December 26, 2011, Linzy left the bar carrying the six-pack of beer he had purchased. He sat down outside the bar at the table normally reserved for the bouncer and waited for his friend Graves.
>
> Gary Hall approached Linzy and told him he could not sit at that table. Hall then went back inside the bar. Graves came outside and spoke with Linzy. Hall came outside again to get a pack of cigarettes out of his car. Linzy followed behind Hall to his car, yelling and taunting him. As Hall attempted to return to the bar, he tried to avoid Linzy and Graves. However, Linzy and Graves encircled Hall. Linzy was yelling at Hall and got in his face.
>
> Hall punched Linzy in his left eye. A fight ensued. Linzy and Hall wrestled and fell into the fence that surrounded the smoking area. Linzy pointed a revolver and shot Hall twice. One shot was in the side of Hall's neck down into his lung. The next shot was across Hall's body. Hall then began to back up into the bar when Linzy shot Hall a third time. This bullet went through Hall's body and out his back, lodging in the wall of the Kostas Bar.
>
> Gary Hall ran inside the bar saying someone outside had a gun. Hall then ran to the kitchen and fell down, where he died.
>
> Steve Bulakovski, manager of the Kostas Bar that night, went outside to investigate. He asked Linzy who had the gun. Linzy said he did not know. Bulakovski then saw Linzy with the gun. Linzy began to walk away from the bar up Tower Drive and into a wooded lot. Bulakovski followed Linzy up the street. Officer Joseph Soehnlen of Mansfield Police Department arrived and followed them.
>
> Linzy attempted to hide behind a tree with a brush pile. Officer Soehnlen drew his weapon and approached. Linzy came out with his hands up and was arrested without incident. The search incident to arrest did not reveal the presence of a gun on Linzy's person. The gun was found hidden in a nook in the tree behind which Linzy had attempted to hide. The nook in the tree was above eye level, about seven feet off the ground. An examination

of the revolver revealed three spent shell casings and two live rounds contained in the chambers.

A gunshot residue kit was performed on Linzy and photographs were taken of the blood on his knuckles and hands. Upon booking, it was revealed that Linzy also had a bruised left eye.

Linzy declined to make a statement and exercised his right to consult an attorney. While being transported to the jail, and after being told that he would be charged with murder, Linzy made an unsolicited statement to Officer Soehnlen, "I did not want that man to die, but he shouldn't have put his fucking hands on me. You live by the sword, you die by it."

Evidence was collected after the homicide. A DVD copy of the video security system recording some of the incident was collected. DNA standards from Linzy, Gary Hall, and Kenny Graves were collected. The car in which Kenny Graves had fled in and his coat and sweater that had blood on them were collected.

DNA testing of the handle, the trigger, and the front of the gun revealed that Linzy was the major contributor. Both Hall and Graves were excluded from that sample. The blood on Graves' jacket and sweater was Linzy's blood. Linzy was found positive for gunshot residue, as was Hall, but not Graves.

A jury convicted Linzy on all six counts and specifications. The trial court sentenced Linzy on March 26, 2012, and a subsequent Sentencing Judgment Entry was filed on March 29, 2012. Subsequent to the Sentencing Entry filed on March 29, 2012, an amended Sentencing Entry was filed on April 10, 2012 after the Court discovered that it had neglected to include Linzy's sentence on count six of the indictment (criminal tools) in the previous sentencing entry. Linzy was sentenced to an aggregate sentence of 21 years to life with five years post-release control.

(Doc. 5-1, ¶¶ 1-12).

## PROCEDURAL BACKGROUND

### State Trial Court

Petitioner was indicted on January 6, 2012, by the Richland County Grand Jury for the offenses detailed above. (Docs. 5-2, 5-3). The jury trial commenced on March 19, 2012, and the verdict was reached on March 27, 2012. (Docs. 5-2, 5-5, 5-6, 5-7, 5-8, 5-9). Petitioner was sentenced on March 28, 2012. (Doc. 5-4). An amended sentence on Count 6 only was filed on

April 10, 2012. (Doc. 5-10). On April 13, 2012, the trial court overruled Petitioner's April 9, 2012, motion for acquittal. (Doc. 5-11).

### Direct Appeal

Petitioner, through new appointed counsel, filed a timely direct appeal on April 25, 2012, from the judgment of conviction. (Doc. 5-12). An amended notice of appeal was filed with leave of court on October 15, 2012. (Doc. 5-14). That same date, counsel filed Petitioner's brief in which he presented the following six assignments of error:

1. The trial court erred in not granting the Defendant-appellant's motion to continue the jury trial.

2. The trial court erred in not granting the Defendant-appellant's motion in opposition to the state's motion for jury view.

3. The trial court erred in overruling the Defendant-appellant's motion for acquittal pursuant to Ohio Criminal Rule 29(A).

4. The trial court erred in denying the Defendant-appellant's Ohio Criminal Rule 29(C) motion for acquittal.

5. The trial court committed prejudicial error by not including the Defendant-appellant's proposed request for inferior degree charges in the court's jury instruction.

6. The verdict of the jury finding the Defendant-appellant guilty on all six charges in the indictment was not supported by the evidence.

(Docs. 5-1, 5-15). The State filed an appellee brief on November 21, 2012. (Doc. 5-16). The appellate court affirmed the judgment of conviction on March 25, 2013. (Doc. 5-1).

### Ohio Supreme Court

On April 29, 2013, Petitioner filed a timely *pro se* notice of appeal with jurisdiction memorandum in the Ohio Supreme Court from the direct appeal judgment. (Docs. 5-17, 5-18, 5-19). Petitioner presented the following four propositions of law for review:

1. The sufficiency and the manifest weight of the evidence are standards defined in the Ohio Justice system. Defendant requires clarification of

4

these standards to show the burden of proof was not met by the state in proving his guilt beyond a reasonable doubt.

2. Defendant was denied due process by the denial of requested Motion in Opposition to the State's Motion for Jury View.

3. Defendant was denied due process by the denial of requested Motion to Continue which was an abuse of discretion by trial court.

4. Defendant was denied due process by the denial of requested instructions [involving the lack of instruction on the allied offenses of the lesser included offense of Voluntary Manslaughter] to the jury in violation of Ohio Rev. Code § 2945.74. (Explanation added).

(Doc. 5-19).

On July 24, 2013, the Ohio Supreme Court declined jurisdiction. (Doc. 5-20). There was no further appeal from that judgment. The 90-day period for seeking certiorari in the United States Supreme Court expired on October 22, 2013.

***Petition for Post-Conviction Relief***

On January 28, 2013, while the direct appeal was pending in the state appellate court, Petitioner filed a *pro se* petition for post-conviction relief in the trial court. (Doc. 5-21). The State filed a response opposing the petition and Petitioner filed a motion to supplement the petition. (Docs. 5-22, 5-23). On March 8, 2013, the trial court denied the petition on the basis of *res judicata* and the motion for leave to supplement the petition. (Doc. 5-24).

Petitioner filed a timely *pro se* notice of appeal on April 4, 2013. (Doc. 5-25). On June 12, 2013, the appeals court dismissed the action due to Petitioner's failure to prosecute where Petitioner failed to file an appellant's brief following the filing of the record. (Doc. 5-25). There was no further appeal from this judgment.

*Application to Reopen Direct Appeal – App. R. 26(B)*

On June 24, 2013[1], while the direct appeal was pending in the Ohio Supreme Court, Petitioner filed a timely *pro se* application to reopen the direct appeal. (Doc. 5-26). In the application, Petitioner claimed that appellate counsel was ineffective on direct appeal in the following six respects:

1.  Failed to appeal the issue that the trial court committed prejudicial error when it failed to give a self-defense jury instruction.

2.  Failed to claim that trial counsel was ineffective by failing to locate and interview any of the State witnesses or conduct adequate research into the case for a defense based upon the facts of self-defense.

3.  Failed to claim that trial counsel was ineffective in failing to acquire a DNA expert and failed to thoroughly investigate the incident and conduct a meaningful cross-examination of the State's DNA expert.

4.  Failed to claim trial counsel was ineffective in failing to submit a toxicology report.

5.  Failed to claim that Linzy was deprived of his Sixth Amendment right to counsel where trial counsel failed to cross-examine the medical examiner about important statements.

6.  Failed to claim error where the trial court failed to merge his murder convictions for sentencing purposes as allied offenses of similar import.

(Doc. 5-26). The State filed an opposition to reopening. (Doc. 5-27). On September 16, 2013, the appellate court granted the application and reopened the direct appeal solely as to the sixth claim. (Doc. 5-28).

On January 21, 2014, new appointed counsel filed an appellant's brief presenting a single question of law: Was appellate counsel ineffective and the appellant prejudiced by counsel's failure to address the issue of whether appellant's convictions for two counts of murder must

---

1. A timely application to reopen must be filed in the appellate court within 90 days of the appellate court judgment. Ohio App.R. 26(B)(1). The 90-day period for Petitioner's application to reopen his March 25, 2013 judgment expired on Sunday, June 23, 2013, which was extended to the next business day, Monday, June 24, 2013.

merge into a single conviction and imposition of a sentence that is appropriate for the offense chosen for sentencing? (Doc. 5-29). The State filed a brief, conceding that the two murder convictions were allied offenses for sentencing purposes. (Doc. 5-30).

On April 23, 2014, the appeals court affirmed all of the convictions, but vacated the sentence on the two murder counts and ordered a new sentencing hearing on remand. (Docs. 5-31, 5-32). On June 4, 2014, the trial court merged Count 2 Murder into Count 1 Murder for sentencing purposes and re-sentenced Petitioner, in combination with the remaining terms on the remaining counts, to a total aggregate term of 21 years to life in prison. (Doc. 5-33). There was no appeal from that judgment. Thereafter, on July 30, 2014, the trial court filed an amended re-sentencing entry as to Count 6 only which did not affect his aggregate sentence. (Doc. 5-37).

## FEDERAL HABEAS CORPUS

Petitioner filed a timely petition for writ of habeas corpus under 28 U.S.C. § 2254 on July 11, 2014. (Doc. 1). Petitioner alleged the following grounds in support of the Petition:

> **GROUND ONE**: The State failed to meet its burden of proof as evidence was insufficient to prove guilt beyond a reasonable doubt in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

> **GROUND TWO:** Defendant was denied due process by trial court granting the State's Motion for Jury View of the scene of the crime as opposed by Petitioner in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

> **GROUND THREE**: Defendant was denied due process by the denial of requested Motion to Continue which was abuse of discretion by trial court in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

> **GROUND FOUR:** Defendant was denied due process by the denial of requested instructions to the jury which was an abuse of discretion by the court.

(Doc. 1). Each of these grounds was properly presented to the state courts on appeal; however, the Respondent argues Grounds Two and Four are non-cognizable in federal habeas, and this Court agrees.  Thus, the Court will review the merits of the claims raised in only Grounds One and Three.

**JURISDICTIONAL ISSUES**

***Non-Cognizable Claims***

The Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, federal courts may only grant habeas relief on the basis of federal law that has been clearly established by the Supreme Court. § 2254(d)(1). Further, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

<u>Ground Two</u>

Petitioner originally raised this challenge to a jury view of the crime scene in a pretrial opposition, but the trial court granted the State's request for good cause shown. (Doc. 5-15, Exs.

8

G-I). The Fifth District Court of Appeals addressed the merits of Petitioner's claim on appeal as follows:

> R.C. 2945.16, pertaining to a jury view reads as follows,
>
>> When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court.
>
> A view of a crime scene is not considered evidence, nor is it a crucial step in the criminal proceedings. *State v. Richey,* 64 Ohio St.3d 353, 367, 595 N.E.2d 915, 927(1992), *overruled on other grounds State v. McGuire,* 80 Ohio St.3d 390, 1997–Ohio–335, 686 N.E.2d 1112; *Accord State v. Smith,* 90 Ohio App.3d 177, 180, 628 N.E.2d 120, 121(12th Dist.1993); *State v. Hopner,* 112 Ohio App.3d 521, 542, 679 N.E.2d 321(2nd Dist.1996). The trial court has broad discretion in determining whether to authorize a view of the crime scene. *Richey* at 367, *citing State v. Zuern,* 32 Ohio St.3d 56, 58, 512 N.E.2d 585, 588 (1987).
>
> We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him. See *Smith v. Flesher,* 12 Ohio St.2d 107, 233 N.E.2d 137(1967); *State v. Stanton* 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v. Aleshire,* 5th Dist.App. No. 09 CA 4, 2009–Ohio–5097, ¶ 16. *See, also,* App. R. 12(D).
>
> Linzy fails to articulate any prejudice he claims resulted from the jury view. "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor,* 9th Dist. No. 2783–M, 1999 WL 61619(Feb. 9, 1999) at *3. *See, also,* App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60, 682 N.E.2d 1006(9th Dist. Sept. 11, 1996).
>
> From our careful review of the record, we conclude that the trial court did not abuse its discretion by granting a jury view of the crime scene.

(Doc. 5-1, ¶¶ 30-34).

In light of the discretionary nature of a trial court's decision to allow a jury view and its non-evidentiary status, the Court finds this ground for relief non-cognizable. A trial court's

ability to allow a jury view is well-established in state law, *see State v. Hopfer*, 112 Ohio App.3d 521 (2d Dist. 1996); and is within the broad discretion of the trial court. *See United States v. Moonda*, 347 F.App'x 192, 201 (6th Cir. 2009) ("[a] trial court's decision to allow or disallow a jury viewing of an alleged crime scene is highly discretionary.") (citations omitted). Further, Petitioner has done nothing more than provide general allegations that the jury view violated his due process, which is insufficient to establish a federal claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). As a claim for abuse of discretion by a state court judge is purely an issue of state law, and because Petitioner has not proven that the jury view rendered his trial fundamentally unfair, it is recommended Ground Two be dismissed as non-cognizable. *See Clay v. Smith*, 2010 WL 4026134, at *9-12 (N.D. Ohio) (analyzing abuse of discretion claim in the context of non-cognizability).

Ground Four

Here, Petitioner contends that the trial court erred by failing to give requested instructions on voluntary manslaughter, involuntary manslaughter, and reckless homicide. (Doc. 14, at 6). Petitioner also contends there is a controversy over whether his was a capital case, thus entitling him to instructions on lesser-included offenses. (Doc. 14, at 7-8). It is clear from the indictment that Petitioner was charged with murder under R.C. §§ 2903.02 and 2903.03, non-capital crimes. (Doc. 5-3); *see also* R.C. § 2929.02.

***Jury Instructions on Lesser-Included Offenses***

Normally, alleged errors in jury instructions do not rise to the level of federal constitutional violations. *See Engle v. Isaac*, 456 U.S. 107 (1982). However, the Supreme Court granted state criminal defendants in capital murder cases a constitutional right to jury instructions on lesser-included offenses, if the facts of the case so required. *Campbell v. Coyle,* 260 F.3d 531, 540-41 (6th Cir. 2001) (citing *Beck v. Alabama*, 447 U.S. 625, 638 (1980))

(quotations omitted). The Supreme Court reasoned a defendant is entitled to "an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Beck*, 447 U.S. at 635. Ultimately, the determination of whether to provide instructions on lesser-included offenses is a fact-specific inquiry. *See Campbell*, 260 F.3d at 540-46; *Hopper v. Evans*, 456 U.S. 605 (1982) (finding instructions on lesser-included offenses was not warranted, even in capital case, where the evidence did not merit them).

Nonetheless, the Supreme Court explicitly did not address "whether the Due Process clause would require the giving of such instructions in a noncapital case." *Beck*, 447 U.S. at 638 n.14. The Sixth Circuit answered this question in the negative, holding the Constitution did not require a lesser-included offense instruction in non-capital cases because these cases did not implicate the Eighth Amendment. *See Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc). In the absence of a further Supreme Court decision on this matter, a state court determination of whether instructions on lesser-included offenses were necessary cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent; and thus, falls outside of AEDPA's purview. *See McMullan v. Booker*, 761, F.3d 662, 667 (6th Cir. 2014); *Tegeler v. Renico*, 253 F. App'x 521, 525 (6th Cir. 2007) (where an open question exists in Supreme Court jurisprudence as to a particular issue of law, no violation of "clearly established" federal law as determined by the Supreme Court can be shown).

Therefore, to prevail Petitioner must prove that the facts of his case merited instruction on lesser-included offenses and the failure to provide them resulted in a fundamentally unfair criminal process. The Fifth District accurately stated the applicable law regarding when certain jury instructions must issue:

> [A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh

the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 206(1990) paragraph two of the syllabus. If a requested instruction contains a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. *State v. Nelson,* 36 Ohio St.2d 79, 303 N.E.2d 865(1973) paragraph one of the syllabus, *overruled on other grounds by State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583(1982).

However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati,* 46 Ohio St.2d 287, 348 N.E.2d 135(1976); *Murphy v. Carrollton Manufacturing Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832(1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Feterle v. Huettner,* 28 Ohio St.2d 54, 55–56, 275 N.E.2d 340(1971); *Murphy v. Carrollton Manufacturing Co., supra; State v. Coleman,* 6th Dist. No. S–02–41, 2005–Ohio–318, ¶ 12.

\*\*\*\*

In determining whether an offense is a lesser-included offense of the charged offense, "the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense." *State v. Barnes* (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240(2002) quoting *State v. Kidder* (1987), 32 Ohio St.3d 279, 282, 513 N.E.2d 311(1987); *see, also, State v. Koss,* 49 Ohio St.3d 213, 218–219, 551 N.E.2d 970(1990). However, the evidence in a particular case is relevant in determining whether a trial judge should instruct the jury on the lesser-included offense. If the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser-included offense, then the judge should instruct the jury on the lesser offense. *State v. Shane,* 63 Ohio St.3d 630, 632–633, 590 N.E.2d 272 (1992).

(Doc. 5-1, ¶¶ 74-76).

*Voluntary Manslaughter*

In an application of the facts to the crime of voluntary manslaughter, the Court finds the Fifth District's determination that the evidence submitted did not support an instruction on voluntary manslaughter was reasonable. (*See* Doc. 5-1, ¶¶ 77-86). Voluntary manslaughter is characterized by sudden passion or fit of rage brought on by serious provocation which is

12

reasonably sufficient to incite the use of deadly force and knowingly cause death. R.C. 2903.03. The determination of whether provocation was reasonably sufficient to induce sudden passion or a fit of rage requires both an objective and subjective analysis. *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). Objectively, the provocation must lead an "ordinary person [to passions] beyond the power of his or her control[ ]"; and subjectively, the court must ask "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." *Id.* at 634-35.

The only evidence of provocation is the victim punched Petitioner in the face, hardly sufficient provocation to cause an ordinary person to become angry beyond his control. Petitioner submitted no evidence at the trial as to the words spoken between him and the victim and could not recall the events leading up to their altercation. Petitioner then shot the victim twice at close range and a third time while the victim was retreating. Further, Petitioner's unsolicited statement to the police, "I did not want that man to die, but he shouldn't have put his fucking hands on me. You live by the sword, you die by it"; is not indicative of a sudden passion or fit of rage but rather, a calculated choice. In total, the evidence does not reasonably support a charge of voluntary manslaughter even taking into account Petitioner's own testimony regarding his intent.

*Involuntary Manslaughter*

Similarly, the facts in this case do not support an involuntary manslaughter instruction. A person commits involuntary manslaughter when he causes the death of another as a proximate result of committing a felony, in this case felonious assault. R.C. § 2903.04(A). It is undisputed that Petitioner fired the shots at the victim, two of which were at close range, and Petitioner admitted he intended to shoot the victim. The intent to kill is inferred from these admissions and the evidence belies any claim that Petitioner did not foresee the probable harm to the victim.

13

*Reckless Homicide*

Reckless homicide is distinguished by the requisite mental state; a person acts recklessly, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result. R.C. § 2901.22(C). It is generally presumed that people intend the natural, reasonable, and probable consequences of their voluntary actions. *State v. Williams*, 74 Ohio St.3d 569, 574 (1996). As stated above, Petitioner admitted that he intended to shoot the victim which undermines any argument he acted purely with a heedless indifference.

Based on the available evidence, it is not reasonable for the trial court to have instructed on the charges of voluntary manslaughter, involuntary manslaughter, or reckless homicide because Petitioner's own admissions and actions indicate a higher level of intent than is contemplated by these offenses. Therefore, the state courts, in electing not to instruct on these offenses, did not create a fundamentally unfair trial. The Court recommends dismissing Ground Four as non-cognizable.

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not

merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). A decision is unreasonable if the court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Stallings v. Bobby*, 464 F.3d 576, 581 (6th Cir. 2006) (quoting *Wilson*, 529 U.S. at 413). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In deciding if the state court unreasonably applied federal law, a habeas court is to "determine what arguments or theories supported…the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.* at 102. If there is no possibility of disagreement, then a writ of habeas corpus can be properly issued. *Id*. Federal habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03. (citations omitted).

### *Insufficiency of Evidence*

To defeat a claim of insufficient evidence, the court must find that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a

federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume−even if it does not affirmatively appear in the record−that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact.  *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Further it is important to note the double deference applicable in this case; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008).

<u>Ground One</u>

In Ground One, Petitioner alleges his conviction for felony murder cannot stand because the predicate felony, felonious assault, was neither charged nor proven beyond a reasonable doubt. (Doc. 14, at 4-6). Further and somewhat confusingly, Petitioner asserts he is not asking the court to reweigh the evidence but rather is arguing that had the trial court instructed on the lesser-included offenses there would not have been sufficient evidence for the jury to convict for murder in light of his claim of self-defense. (Doc. 14, at 4-6). As the Court has already addressed

16

Petitioner's entitlement to instruction on lesser-included offenses, it will not undergo another analysis. But it suffices to state that as instruction on lesser-included offenses was not necessary, whether the jury could have found sufficient evidence for those offenses is not relevant and cannot serve as basis for constitutional violation. Thus, Petitioner is required to show no rational trier of fact could have found the essential elements of murder and felony murder, the crimes for which he was tried, beyond a reasonable doubt.

The Fifth District rejected Petitioner's insufficiency argument as follows:

> Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v.Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown,* 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

> ****

> Linzy was convicted of murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another…"

> R.C. 2901.22 Culpable mental states, provides:

> (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

> Linzy was also convicted of one count of felony-murder (R.C. 2903.02(B)) based on a predicate felony offense of felonious assault (R.C. 2903.11).

> Felonious assault in violation of R.C. 2903.11(A)(2), states that "[n]o person shall knowingly…[c]ause or attempt to cause physical harm to another…by means of a deadly weapon".

> Pursuant to R.C. 2923.11(A), a deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

17

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

In *State v. Jester*, 32 Ohio St.3d 147, 152 (1987), the Ohio Supreme Court held:

> Where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill. *State v. Clark*, 55 Ohio St.2d 257 (1978). *Accord, State v. Widner,* 69 Ohio St.2d 267, 431 N.E.2d 1025(1982) (finding purpose to kill in passenger's firing gun at individual from moving vehicle).

> The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d 352. Here, defendant looked at a group of individuals, pointed a semi-automatic handgun in their direction, and fired five shots. In so doing, one of the bullets fired from the handgun struck and killed his driver, Andre J. Bender. Although defendant claims the evidence equally supports a conclusion that he was merely trying to scare individuals in the group by firing the handgun into the air, "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported. *Compare State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962 (when an inherently dangerous instrumentality is employed in the commission of a robbery, such evidence permits a jury to find a purposeful intent to kill).

In this case, there was a security video that showed the yelling at and taunting of Hall as he was walking to his car. On the way back into the bar, Linzy and Ken Graves cornered Hall. While cornered Linzy got into Hall's face, yelling at him. Hall then punched Linzy in the eye. From there, a fight ensued where Hall and Linzy go off camera. Linzy admits firing three shots toward Hall at close range. After shooting Hall, Linzy fled the area, hid the weapon, and attempted to hide from the police.

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Linzy committed the crimes charged.

We hold, therefore, that the state met its burden of production regarding each element of the crimes of murder in violation of R.C. 2903.02(A) and felony-

> murder (R.C. 2903.02(B)) based on a predicate felony offense of felonious assault (R.C. 2903.11). Accordingly, there was sufficient evidence to support Linzy's convictions.

(Doc. 5-1, ¶¶ 42-51).

Upon review, the Court finds the Fifth District's recitation and application of the law to be without error. It is evident in this case that this conduct was purposeful, as Petitioner admitted he intended to shoot Hall. Petitioner's admission is conclusive evidence that he is guilty of felonious assault. Further, Petitioner is responsible for the natural and probable consequences of his actions, in this case, the death of an individual caused by three gun shots. Even Petitioner's testimony that he did not intend to kill Hall is irrelevant, he admitted to intentionally shooting Hall – the probable consequence of which is death. There is no question in this Court's opinion that firing a weapon three times at close range into an individual satisfies the intent element of felonious assault, murder, and felony murder. It is also clear that the jury chose to accept that Petitioner acted knowing the probable result of his action. Petitioner did not prove the jury's decisions were in any way unreasonable or unfounded; therefore considering the facts in the record, a "rational trier of fact [could] make a permissible inference of guilt" from the evidence presented. *Newman,* 543 F.3d at 796-97.

Thus, giving full credit to the jury's evidentiary determinations and the state courts' reasonable application of the law in this case, the Court finds Petitioner failed to overcome his burden in proving the insufficiency of the evidence or that the lower courts were objectively unreasonable in their application of the law. As such, the Court recommends Ground One be found without merit and be denied.

*Denial of a Continuance*

The Sixth Circuit addressed the standard for reviewing the denial of a motion for continuance by a state trial court in the habeas case *Beuke v. Houk*, 537 F.3d 618, 641 (6th Cir. 2008):

> A trial court's denial of a continuance rises to the level of a constitutional violation only where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.' " *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)); *United States v. Moreno,* 933 F.2d 362, 371 (6th Cir. 1991). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar,* 376 U.S. at 589, 84 S.Ct. 841. To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he "must also show that the denial of a continuance actually prejudiced his ... defense." *Burton v. Renico,* 391 F.3d 764, 772 (6th Cir. 2004). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise [would have benefited] the defense." *Powell v. Collins,* 332 F.3d 376, 396 (6th Cir. 2003).

<u>Ground Three</u>

The Fifth District analyzed Petitioner's assignment of error related to the denial of motion for a continuance as follows:

> Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins,* 332 F.3d 376, 396(6th Cir.2003); *State v. Unger,* 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078, 1080(1981); *State v. Wheat,* 5th Dist. No.2003–CA–00057, 2004–Ohio–2088, ¶ 16.
>
> In the present appeal, Linzy does not point to any identifiable prejudice to his case as a result of the denial of his motion to continue the trial date, such as the inability to subpoena a witness. Further, the trial court was not presented with any facts to indicate that defense counsel was unable to interview the state's

witnesses. There was no showing of what efforts, if any, had been made to locate and interview state witnesses. Similarly, with respect to defense witness, he presented no facts to the court to indicate their identity, the materiality of their testimony, or the reasonable likelihood that they could be found. Finally, defense counsel gave no specifics to support his contention that he needed more time to adequately prepare a proper defense. Counsel did not, for example, state that he was otherwise committed, that he was unable to obtain sufficient discovery from the prosecutor, or that he needed additional time to obtain evidence critical to his defense, such as psychiatric evaluation or medical records. *State v. Sowders,* 4 Ohio St.3d 143, 145, 447 N.E.2d 118 (1983).

****

Considering the lack of information presented to the trial court at the time of the request, the trial court clearly felt that competent counsel adequately represented Linzy and that there was no reason to delay the trial. As such, we find that the trial court did not abuse its discretion when it denied the motion to continue the trial.

(Doc. 5-1, ¶¶ 21-25).

In reviewing the motion for a continuance and the State's response, the Court agrees with the conclusion of the appellate court that counsel did not present a justifiable reason for the delay at the time of the request. In the motion for continuance, Petitioner's counsel alleged he had only just learned of the State's intent to call 34 witnesses and asserted he needed more time to prepare. (Doc. 5-15, Ex. C). However in the State's response, it rebutted these allegations with reference to pre-trial conferences, initial and supplemental witness lists, and submitted witness statements and reports. (Doc. 5-15, Ex. D). Further, Petitioner's counsel made no allegation of specific prejudice in the motion, and Petitioner has not contended any specific prejudice in his habeas filings. In light of the evidence that defense counsel had knowledge of the proposed witnesses' identities and testimony and the advanced stage of the proceedings, it is not unreasonable for the trial court to deny the motion. As a fair-minded jurist could reach the same conclusion as those of the state courts, the Court recommends denying Ground Three.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the

Court deny the Petition.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of

Court within fourteen days of service of this notice. Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*,

638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).